FILED
2026 Jul-30 PM 08:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

TRULINCS 21758032 - BOWLING, APRIL - Unit: ALI-A-C

pg 1

---

FROM: 21758032
TO: Cole, Jeff; Mapson, C
SUBJECT: Part One
DATE: 06/20/2026 12:17:08 PM

FILED AO
2026 JUL 30 P 12:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF ALABAMA

. APRIL BOWLING -21758032

.MACKENZIE BAILEY -24479052

. PLAINTIFFS

. VS

. WARDEN BROTON, (In her official and individual capacity as Warden of FCI Aliceville)

. T. Garner, (In his official and individual capacity as a Federal Correctional Officer)

. MOTION UNDER BIEVENS

. INTORODUCTORY STATEMENT

. 1) This is a Bievens action brought on behalf of the named Plaintiff's who is now confined in the United States Federal Prison FCI Aliceville in Aliceville, Alabama.

. 2) Plaintiffs SEEKS compensatory damages, punitive damages and injunctive relief from cruel and abusive conditions of confinement imposed by Defendants that violate Constitutional/Civil Rights guaranteed to her by the First,Fourth,Sixth, and Fourteenth Amendments, and by Federal and state statutes. These conditions seriously endanger the Plaintiff's physical and psychological health and safety, deprive them of the basic human needs. This serious lack of security, lack of adequate staff, obvious conspiratorial relationship with the Federal Bureau Employees has allowed and created knowingly living conditions that have developed a system wide culture of abuse. The SHOCKING and Malicious behaviors exposed throughout the country in regards to the Bureau of Prisons staff has caused District Courts to stop blindly relying upon the word of the Bureau vs. the women that have been brave enough to come forward. The Plaintiff herein WILL SHOW that the Defendants abuse warrants this court taking a stand against abuse towards women even if those women are prisoners.

. JURISDICTION

. 3) The Plaintiff's are housed in FCI Aliceville located in Aliceville, Alabama giving this court jurisdiction over all condition of confinement and constitutional claims.

. PLAINTIFFS

. 4) Plaintiff April Bowling is a citizen of the United States. She is currently confined in the facility. She sues in Pro Se.

. 5) Plaintiff Mackenzie Bailey is a citizen of the United States. She is currently confined in the facility. She sues in Pro Se.

. DEFENDANTS

. 6) Defendant Warden Broton is Warden of FCI Aliceville. She is the chief executive officer of FCI Aliceville, and is responsible for the development and implementation of the policies, practices, and procedures described in this complaint, which are the official polices, procedures, and practices of the BOP and Constitution and United States Federal Laws.

. 7) T. Garner is a correctional officer responsible for the safety and well being of the women at the facility and is a housing unit officer.

. 8) The defendant works at FCI Aliceville located in Aliceville, Alabama for the Federal Bureau of Prisons (BOP) during the time that the accused misconduct occurred. The Defendant has worked with in violations of the United States Constitutional and Federal Law of the nation. The Defendants have all worked with in knowledge that their misconducts are illegal and violate the Constitutional rights of each Plaintiff named herein and unnamed joiners who were housed at FCI Aliceville in Alabama during their employment with the BOP. Additionally, the Defendant was in knowledge of illegal misconducts of other staff members working at FCI Aliceville and did nothing to prevent the illegal actions and conducts of fellow staff members. All have worked in a conspiracy to keep silent in regards to abuses, neglect, and deliberate indifference practices of BOP staff members during their term of employment.

. 9) The Plaintiffs claims of Eighth Amendment violations has two required components, See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.CT 2321,2324, 115 L. Ed. 2d 271 (1991). First, the deprivation alleged must be sufficiently serious. See id., 111 S. CT. at 2324. "Only those deprivation denying the minimal civilized measures of life's necessitates are sufficiently grave to constitute cruel and unusual punishment. Id,, 111 S. Ct. at 2324 ( quoting Rhodes V. Chapman, 452 U.S. 337,347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981). Second, the prison official must have acted with a sufficiently culpable state of mind. See id. at 305, 111 S. Ct. at 2328; Farmer, 511 U.S. at 838, 114 S. Ct. at 1979. In prison condition of confinement cases, that state of mind is deliberate indifference, which the Supreme Court defined as knowing of and disregarding an excessive risk to inmate health or safety. See id., 114 S. Ct. at 1979. However, mere neglect and/or {2018 U.S. Dist. LEXIS 4} negligence do not constitute deliberate indifference.

. 10) The Plaintiffs in this case have had to suffer such cruel and unusual punishments of: 1) sexual harassment; 2) sexual assaults'; 3) threats; 4) mental abuses and cruelties; 5) bullying by abusers,their friends; 6) humiliations that are shocking to the conscience. The defendant has conducted personally the offenses against the Plaintiffs and/or has knowledge that other Defendants are conducting such actions while disregarding the excessive risk to inmate health and safety.

. 11) "An Eighth Amendment claimant need not show that a prison official acted believing that harm would befall an inmate; It is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. Under exceptional circumstances, a prison officials knowledge of a substantial risk of harm may be inferred by the

obviousness of the substantial risk.

. Additionally, deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference in manifested by prison doctors or by prison guards in intentionally denying or delaying access to medical care. Estelle v. Gamble, 429 U.S 97, 104- 05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Harris v. Hegmann, 198 F. 3d 153, 159 (5th Cir. 1999). Deliberate indifference is an extremely high standard to meet."

. 12) The Plaintiff's WILL SHOW that it is the CULTURE of the prison system that deliberate indifference under the Eight Amendment is the common practice and that the Supreme Court has adopted ' subjective recklessness as used in the criminal law' as the appropriate definition of deliberate indifference under the Eighth Amendment. Farmer, 511 U.S. 825, 839-40, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Under this definition, a prison official cannot be found liable under the Eighth Amendment unless the official knows of the disregards and excessive risk to the inmate health and safety.

. 13) The Plaintiffs herein SHOW that not only did the Defendants personally have knowledge, but each Defendant acted with deliberate indifference in the shown misconducts that violated the Plaintiffs constitutional rights. Not each defendant had involvement with the other named Defendants violations, and therefore named herein to what conduct violated each Plaintiff they are responsible for violating.

. 14) Named Plaintiffs bring this action on behalf of themselves and all other similarly situated pursuant to Rule 23(a) and (b)(2) of the federal rules of Civil Procedures. The class consist of all AIC'S who are currently or have been during the past three years confined to the Federal Prison Institution at FCI Aliceville.

. 15) The members of the class are so numerous that joiners of all members is impractical. During the past three years, Defendants have confined more than 1,000 women in the institution.

. 16) Plaintiffs are subject to the conditions of the prison and the practices of the Defendants described in the complaint during their confinement at the facility, so that there are questions of law and fact common to the members of the Plaintiff class. The questions of law and fact common to all members of the Plaintiff class include whether the conditions, practices, acts, and omissions complained have occurred at the institution, and whether these conditions and practices violate Plaintiffs' constitutional and civil rights.

. 17) The claims of the named Plaintiffs are typical of the claims of the Plaintiff class. At least one of the names Plaintiffs has been subjected to and suffered from each of the conditions, policies, practices, acts, and omissions complained of in this action.

. 18) One of the requirements that is not mention e in Rule 23 is "ascertainability", which means that the class must be defined in a way that permits the court to determine who is a class member and who is not. Other prerequisites for a class

action are listed in Rule 23(a), Fed. R. Civ. P.

. (a) The class must be so numerous that joiner of all class members is impracticable. To meet this requirement, the class need not be enormous in number. It is not necessary to prove the size of the class with precision as long as there is some basis for a reasonable estimate. The court must consider other factors that may make individual joiner's of all class members impractical, including that class members are unlikely to bring their own suits because of poverty, illiteracy, or language barriers, lack of education, limited access to legal representation, etc.. See. Cortigiano V. Oceanview Manor Home for adults, 227 F.R.D. 194, 204-05 (E.D.N.Y. 2005) (citing class members 'fear or reprisals, mental disabilities, and lack of resources to prosecute their own claims in certifying class in group residence case); Amone v. Aveiro, 226 F.R.D. 677, 684 (D.Haw. 2005) (class certified of individuals "whose financial circumstances may prevent them from pursuing individual litigation, who are unlikely to know that a cause of action exists. and whose individual claims are likely to be too small to make individual litigation feasible").

. The fact that a class is "fluid" --i.e.., that is membership changes, as is true of most prison and jail population weighs in favor of class certification in cases seeking injunctive relief. See Skinner v. Uphoff, 209 F.R.D. 484,488 (D. Wyo. 2002); Nicholson v Williams, 205 F.R.D. 92, 98 (E.D.N.Y. 2001); Christina A. ex rel. Jennifer A. V. Blommberg, 197 F.R.D. 664, 667 (D.S.D. 2000). The class members herein meet this requirement.

. (b) There must be question of law or fact common to the class members. This requirement is met if there is one or more common issue of law or fact as to all or most of the class members. The existence of some factual variations does not defeat the class certification. The Class members herein meet this requirement.

. (c) The claims or defenses of the representative parties must be typical of the claims or defense of the other class members. In this case all class members have the same basic claims or defenses of each class member.

. (d) The representative parties must fairly and adequately protect the interest of the class. This requirement means that 'the class representative has common interests with unnamed class members and will vigorously prosecute the interest of the class through qualified counsel. The common interests prong means that the court will consider whether Blake has any conflicts of interest with other class members that would prevent her from being able to represent them fairly. Mere

FROM: 21758032
TO: Cole, Jeff; Mapson, C
SUBJECT: Part Two
DATE: 06/20/2026 12:19:37 PM

differences of opinion among class members will not defeat certification. Sometimes defendants argue that named Plaintiffs in prison and other kinds of civil rights litigation are not adequate representatives because they have criminal records, suffer from mental illness, etc. Courts have rejected this argument, pointing out that if they accepted it, whole classes of plaintiffs would be barred from class action litigation. See Bynum v. District of Columbia, 217 F.R.D 43, 47 (D.D.C) 2003); Daniels v City of New York, 198 F.R.D. 409, 418 (S.D.N.Y. 2001).

. The 'qualified counsel' requirement has generally been construed to mean that counsel must have a reasonable amount of experience relevant to the proposed class action. The rules now spell this out: courts are supposed to appoint (i.e.,approve) class counsel, based on the work they have done in investigating the case; their experience in handling class actions, other complex litigation, and the types of resources they will commit to representing the class; and any other factors relevant to their ability to fairly and adequately represent the class. Rule 23(g)(1), Fed.R.Civ.P.

. The plaintiff does not meet this requirement due to being in pro se. The plaintiff have provided this Honorable Court with an additional attached motion SEEKING appointment of counsel. The Plaintiffs are SEEKING appointment of counsel due to they are seeking injunctive relief and damages sought for the class under Rule 23(b)(2) and (3) which requires the court to find that common questions "predominate" over questions affecting only individuals and that a class action is "superior" to other methods of handling the controversy. See Dublin prison litigation case.

. FACTUAL ALLEGATIONS

. 19)The Defendant has SHOWN to be in conspiracy to further the abuses of named and unnamed Plaintiffs housed at FCI Aliceville, through, conditions of confinement being so lacking as to endanger the health and mental well being of all in their care, 1) sexual assaults' and harassments that run rampant on the compound, 2)mental health care being so lacked that women have killed themselves and suffer serious mental depression, 3)humiliations and retaliations with threats.

. Each Plaintiff will list the violations she has been subjected to by the properly named Defendants;

. PLAINTIFF BOWLING/ SEXUAL HARASSMENTS:

. 20) The Plaintiff Bowling has suffered mental shame, pain, stalking all at the hands of Defendant T. Garner.

. (a) Defendant Garner began by coming to Plaintiff's and co-Plaintiff's room and making lood gestures and laughing about it.

. (b) The Plaintiff was asked to engage with sexual acts such as oral sex, kissing, and other stuff with her Bunkie so that he could watch.

TRULINCS 21758032 - BOWLING, APRIL - Unit: ALI-A-C
Pg 6

FROM: 21758032
TO: Cole, Jeff
SUBJECT:
DATE: 07/22/2026 06:52:40 PM

. (c) Many times the Plaintiff was asked to have sex with him and her Bunkie.

. (d) There was no place safe for the Plaintiff to hide in the housing unit. Defendant Garner would walk the top tier and come to her cell (201) and look in the window and just open the door without knocking (even with the wickie up). He would ask for her to get naked so he could see her body.

. (e) Many times Defendant would call out loud in the housing unit the Plaintiff's name for her to come down to the officer's station and when she would reach the office he would state things such as but not limited to:
. (1) When are you gonna give me a blowjob?
. (2) When you gonna let me fuck you?
. (3) Tonight I will come get you and your Bunkie (Bailey) so you can act like you are cleaning and we are gonna have sex in the closet!

. (f)The Plaintiff started being unable to even shower without having her Bunkie go with her and make sure that she had someone there to witness what she was suffering. Because her Bunkie (Bailey) was also a victim of the Defendant. They always tried to be together.

. (g) Defendant Garner would stand in the doorway of her cell and rub his penis and talk to her about how it was getting hard.

. (h) Defendant Garner came to the Plaintiff's cell one day and demanded that Bowling call her Bunkie upstairs to apologize to him "right fucking now" or he was not gonna give her mail to her. This was over Plaintiff Bailey telling the Defendant to stop and no. He (Garner) was not going to stand for that and saw it as talking back or insaboration towards his power as the officer. The threats were made that if she did not say sorry and mean it there would be hell to pay. (Blake) was standing at the hot pot machine and heard this demand as well as the force that Defendant demanded the words "I am sorry" from Bailey).

. (i) Plaintiff Bowling and Bailey went back into their room as soon as Garner walked away ranting about the disrespect from her ass.

. (k) Witness Blake came to the room and saw this and asked "are you two gonna be ok"?

. (l) Plaintiff Bailey was sitting on the bed crying. She felt beaten down and filthy and trapped as well. There was no where to go and no one to talk to about it because Defendant Garner was a very loved Officer on the compound by staff members and inmates. The dynamics at FCI Aliceville is that so many officers are family members, or friends that each one takes it highly personal if you even attempt to report a staffer for misconduct. It spreads over the compound and you are no longer safe.

. (m) Plaintiff Bowling was in the orderly closet downstairs one evening with Bailey and another AIC and officer Garner came to the door and asked them "what are you all doing in here" and went to tell us to have sex with one another and him as well that he would only need a couple minutes with us and the AIC (unnamed) said "what are you a two pump chump"? Defendant Garner left the closet mad.

. There is no way to make others understand what the powerless feeling of sexual assaults' truly makes you as a human being feel. The invading's of another against your will and then not having anyone that is going to put a true stop to it because you are viewed as worthless, which makes you even feel more like the "trash" they call you.

. PLAINTIFF BAILEY: SEXUAL ASSUALT/HARASSMENT

. 21) The Plaintiff has suffered humiliations, mental anguish, physical shaming, and degrading sexual comments and requests all from the Defendant T.Garner while he was working as a correctional officer for the BOP and inside housing unit A-3. She was Bunkie's with Defendant Bowling There is no way to ever be the same when you have been stalked and aggressively pressured for sexual acts and spoken to as if you do not matter at all and are merely there for someone else's pleasure. As a young woman the Plaintiff suffered at the hands of another man and as she has grown she thought that she had put all that evil behind her in life. This is suppose to be a safe place away from sexual predators after all they are government employees these monsters hold power over others and that comes with certain amounts of trust. The Plaintiff was thrown right back into hell inside her own mind when these attacks began. First, she thought ok, maybe he is joking? Second, she though ok, maybe I can just stay away from him and he will stop because he is not getting anywhere. Third, she thought, this is not happening to me. Fourth, she thought, I have to find someone to tell to get help. Fifth, she found out that there was no one inside that she could tell because they are all family, friends, or lovers and this left her to turn to the public. So, the Plaintiff had to start telling her truth to the world and hope that someone out there would care and make the BOP stop this. What she found is that the attention on the facility did cause change and did bring eyes more to the happenings at the prison and that was great in itself. Now she is standing up for herself in the courts here and now. There was no help for them or the other Plaintiff's when it was happening but the public has blessed these Plaintiff's with the strength to go forward to the courts and speak out against the criminal behaviors that they have crushed upon us as women.

. (a) The defendant would stand in the closet door and say nasty foul things to the Plaintiff.

. (b) One occasion the Plaintiff was walking by the defendant and he said, "I will love having that ass!" and she told him to stop his shit. This caused great anger out of the defendant and he yelled at her in front of many other prisoners ( who did not hear what he had said under his breath to her) "You will say you are sorry to me" You think you know me bitch I will show you who I am!"

. (c) Later that evening Defendant Garner forced Plaintiff Bowling to call the Bailey up to the room and he demanded that she give him a heart felt apology or she would find out what he could do.

. (d) The Plaintiff was forced to say she was so so very sorry MR.GARNER and Plaintiff Blake was just a few feet away at the hot water machine listening to the exchange.

. (e) Plaintiff Bailey went to the room and sat on the bed and cried because she was scared that he was going to hurt her or send her to the SHU for some made up reason. After all he is the guard and nothing an inmate says is believed by any staff here at FCI Aliceville. She would have been back there all alone and cold, without any of her food, property or what small since of protection that she did have with her Bunkie and plaintiff Blake. Each one was watching out as best as could be done for the other.

. (f) Plaintiff Bailey was living in total fear and only would go shower if her Bunkie (Plaintiff Bowling) was also going.

. (g) The Defendant would adjust his penis so that she could see the size of it in the door. And he didn't like that she would turn away.

. FAILURE TO PROTECT

. 22) When the Plaintiff's started out on the journey to build this lawsuit all the fears resurfaced. There was no question the staff members knew that it was being built and the staff began to gather prisoners that they have control over to taunt and threaten each of the Plaintiffs. When a woman is living inside federal prison she is basically like a caged dog at the pound. There is nowhere for her to go if she needs help of any kind, love, or calm. The very staff works against every one of their own program statements to ensure that the women are broken down, play toys at their disposal should they choose to eat them up and spit them out. The women that are not subjected to sexual assaults' and harassments are not left out of abuses, they are subjected to war-fair against their mental well being. Games are played by the staff that are meant to break a woman down to the point that she believes she is not worth a single thing to anyone. If there is family out there that loves these women there is no way for that woman to hold on to them through phone calls and the staff knows this. Upper staff members such as Wardens, Asst. Wardens and Case Managers all use mental anguish through lying to the women about their rights, their worth, their value and what is available to them under the Federal Laws such as the First Step Act and Second Chance Act. At FCI Aliceville the staff and Defendant named are so cruel that they use other staff members to create pain while spreading the understanding that no one cares about you (the inmate).

. Failure to protect is how the system wide abuses across the nation inside prisons is being allowed to even occur. Without the failure to protect occurring/failure to properly train there would never have been created such a OVERWHELMING, SHOCKING, DISGRACEFUL AMOUNT OF RAPE CLUBS WITHIN THE PRISON SYSTEMS. Blind eyes are turned inside the prisons

by upper staff members that is how this keeps occurring throughout the nation. The hiring that is being done is projecting

FROM: 21758032
TO: Cole, Jeff
SUBJECT: Part Three
DATE: 06/20/2026 12:21:41 PM

.an atmosphere of 'rape clubs' and abuse at your will because they all deserve all you can dish out clubs. The mindset inside prison with the staff is that it is a job perk to abuse prisoners. All assaults on prisoners only occur when the conditions of the prison are dangerous. The Warden and AW was informed about the abuses happening on FCI Aliceville compound and the only thing that the Defendant AW Trotman could say to Plaintiff Bailey was, "I know that there is so many victims on this compound, trust me I see them walking around everyday.

. 23) When looking at Sexual Assaults Generally the court must look at the nature of the intended actions of the Defendant as well. Using unlawful force against another person; threatening or placing that other person in fear that any person will be subjected to death, grievous bodily harm, or kidnapping; administering to that other person by force or threat of force, substantially impairing the ability of that other person to appraise or control conduct; is guilty of rape and shall be punished as a court-martial may direct.

. Sexual Assault has been committed when there is a threatening or placing another person in fear or commits the act when the other person is not able to consent. Herein this case all Plaintiff's have been subjected to great fear by the Defendant Garner and were not able to consent to any of his fowl advances as prisoners. Each one of the Plaintiff's have suffered being held in a room because the Defendant was blocking the only door way. Bowling and Baileys fear and threats that they lived under every day and night were proof of threat. That states that in a prosecution under that section,in proving that a person made a threat, it need not be proven that the person actually intended to carry out the threat or had the ability to carry out the threat. Defendant Garner made threats as a trusted in powered Correctional Officer that controls the every movement and freedom of the Plaintiff's there is no reason to think that his threats and advances were not meant. There is every reason to believe that the actions sick as they are were in fact meant in full by the Defendant and he was using his position of trust to gain access to victims that he knew had no where to turn. The system is beyond broken and the monsters that are taking advantage of that fact are partying on the backs of hundreds of thousands of unwilling women in prison. Victims such as the Plaintiffs are merely trapped laid out on display punching bags for the employees that wish to take advantage of them in what ever gross way they see fit. That statement may come across harsh to some but none of the readers of this are inside this display cage to feel it for yourself that is the major difference. Reading about the gross abuses and indifference to all aspects of life is far from being trapped with your abusers day and night with no voice no help and no protection. The abuses suffered herein are repeated and no where near a one time circumstance.

. Deliberate indifference is not merely in regards to medical circumstances. It applies to all circumstances in which a

person willfully chooses to place another in danger or the threat of danger. See Haley v. Gross, 86 F. 3d 630, 642 (7th CIR. 1996) (stating that official who was told a prisoner had been threatening to set a fire and responded, "Well, go ahead, you nigger, burn your black asses. You've got to be in there, "presented "a paradigm case of deliberate indifference"). This is the same standard of recklessness that is used in criminal law, and it is sometimes called the "subjective" approach to recklessness. If prison officials know that conditions are "objectively cruel" and fail to act to remedy then, they are deliberately indifferent. Even if there is direct evidence to what the defendant knew.

JURY DEMAND

24) The BOP is its own community and must be held to a fixed uninformed national standard to precisely what is the 'prurient interest' or is 'patently offensive'. In Hamling v. United States Justice Rehnquist writing for the majority, pointed out that the Court [does] not require as a constitutional matter the substitution of some smaller geographical area." The test, for both state and federal prosecutions is "stated in terms of the understanding of the average person, applying contemporary community standards." This places the responsibility on the juror to "draw on his own knowledge of the views of the average person in the community or vicinage from which he comes." United States v. Obscene Magazines, Films & Cards, 541 F. 2d 810 (9th Cir. 1976); United States v. 2200 Paper Back Books, 565 F. 2d (9th Cir. 1977).
The BOP policy is the standard in which they claim to be permitted to conduct themselves. The public in general will never agree that threatening or sexually harassing/assaulting a woman is a conduct that is turned a blind eye towards. In saying this the Plaintiffs all are in agreement that they are requesting a JURY TRIAL.

THE REAL CULTURE OF THE PRISON SYSTEM WITHOUT BLINDERS

In order to ensure that ALL readers of this lawsuit have a TRUE and FULL visual of what the "culture" is and how rampant the abuse is inside the walls the Plaintiffs are offering this SHOWING to enlighten everyone. The following ARE offenders that have been caught abusing Plaintiffs behind the walls hidden out of the view of the public where they are protected for years while causing great pain and suffering to those that entrusted them to keep them safe. Our government employed them and granted them powers that allowed them to reap pay checks off the suffering of other human beings that were forgotten and forced into silence because they had no one that would listen until is was so bad that others stepped forward.

The Question everyone MUST ask themselves is:

"HOW LONG AND HOW MANY OTHERS DID THEY ABUSE BEFORE THEY WERE FINALLY CAUGHT?"

1) 14 Alabama Sheriff's employees plead Guilty to killing detainee by freezing him to death!
2) Ashley Toney- beating to death prisoner with 6 OTHER GUARDS (because it is the culture)
3) Messiah Nantwi- 1st out of 10 guards to plead guilty to beating to death prisoner (because it is the culture)
4) Baronique Burton- only 9 months on job as prison guard and allowed attack of prisoner (because it is the culture)
5) Chase Branson- an appalling use of force (because it is the culture)

. 6) Andre Hunter- raping women in prison (because it is the culture)
. 7) Elijah Williams- MULTIPLE sexual assaults' (because it is the culture)
. 8) Stephen A. Frank- repeatedly assaulting wife (because it is the culture)
. 9) Ivory S. Cousins- 3 counts depriving prisoners constitutional rights; 1 count falsifying reports (because it is the culture)
. 10) George Jeard Snell- 2 counts aggravated sexual assault of a child; 2 counts of indecency with a child
. 11) John Duran- a fellow guard of Snell's official oppression and tampering with government record after named in sexual assaults (because it is the culture)
. 12) Angela Crosland- drugs into the prison; money laundering from prison job (because it is the culture)
. 13) Lt. Troy Mitchell- waterboarding prisoner (because it is the culture)
. 14) Dr. Jean Hamula- medical cancer treatment delayed (because it is the culture)
. 15) Avelino Ramirez- planting contraband pretended to discover (because it is the culture)
. 16) Sheriff Thomas Hanna- RAPE (because it is the culture)
. 17) T.S. Oswald- Sexual Assault (because it is the culture)
. 18) Khadijah Solomon- Falsifying reports, assaults (because it is the culture)
. 19) Brice Berk-12 Counts of sexual assaults (because it is the culture)
. 20) Mikael Rivera- Sexual assaults (because it is the culture)
. 21) Vanessa Day- Sexual Assaults (because it is the culture)
. 22) Peter Sugen- child sex offender OVER THE PEDOPHILE REHABILTATION (because it is the culture)
. 23) 66 OFFICERS- the Los Angeles County Probation Office- Sexual Assaults and drugs (because it is the culture)
. 24) Captain Javier Ortiz- KNOWS reports of false arrests, harassments and brutal beatings (because it is the culture)
. 25) Gordon Dennis Shaw- SEX TRAFFICKING (because it is the culture)
. 26) Michael LaCombs- Sexual Assaulting another officer/slap on wrist 12 mths house arrest (because it is the culture)
. 27) Ray Garcia- WARDEN BOP Veteran already at 32 years, OVER THE PREA reports and raping women (because it is the culture)
. 28) Ross Klinger- Sexual Abuse (because it is the culture)
. 29) Nakie Numley- Retired Air Force Vet. Sexual Abuse (because it is the culture)
. 30) Andrew Jones- Sexual Assault (because it is the culture)
. 31) Enrique Chavez- RAPE (because it is the culture)
. 32) Larry Brueland- child molester (because it is the culture)
. 33) Morris Gary Hibbitt-Sexual Assault (because it is the culture)
. 34) Carl Lofton Carpenter- stomping prisoner in genitals man died (because it is the culture)
. 35) Derek Stettler- RAPE (because it is the culture)
. 36) Erik Kohlrus- RAPE (because it is the culture)
. 37) Joe L. Binder- 1st degree assault (sexual) (because it is the culture)
. 38) Diangelo Cruz Rivera- Sexual Assault (because it is the culture)
. 39) Christopher D. Weber- child pornography (because it is the culture)
. 40) SGT. Richard Wargo-excessive force (because it is the culture)
. 41) Shana Cloud- murdering husband and concealing the body (because it is the people they hire in this culture)
. 42) LT. Daniel Mitchell-violating civil rights, ordering other guards to "teach inmates lessons" (because it is the culture)
. 43) Jason W. Rohr- tampering with records after a suicide (because it is the culture)
. 44) Thomas Wren- smuggling in contraband (because it is the culture)
. 45) Richard Cacurak-assaults,obstruction, and filing false reports (because it is the culture)
. 46) 30 GUARDS- assaulted 32 prisoners to send message to inmates (because it is the culture)(prison legal news) reported by:Douglas Anlcney pg.28
. 47) Lee Judert- Planting shank in cell after prisoners case was overturned through DNA (because it is the culture)
. 48) John Donelli- Planting shank in cell (because it is the culture)
. 49) Lily Angelo- sexual harassment (because it is the culture) (1.2 million settlement)
. 50) Dr. Maya Hayes- RAPE (because it is the culture)
. 51) Archie Frunzi- Retaliation settlement (because it is the culture)
. 52) Corey May- Retaliation settlement (because it is the culture)
. 53) Kay P. Willis- Deliberate indifference (because it is the culture)
. 54) Roselene M. Omweri- Deliberate indifference (because it is the culture)
. 55) Jakaleb C. Thomas- Drugs into the prison (because it is the culture)
. 56) SGT. Shkebia Stanley-contraband, guns, amo into the prison (because it is the culture)
. 57) Cpl. Bryan Jones- Brutalizing prisoners (because it is the culture)
. 58) Danny L. Spker- Sexual Assault (because it is the culture)
. 59) Timothy Morris- Sexual Assault (because it is the culture)
. 60) James D. Sutton- Distributing Kiddy Porn in prison as a guard, sexual predator (because it is the culture)
. 61) Ethan Eversman- Kiddy Porn (because it is the culture)

. 62) Oscar Vasquez- Sexual Assault (because it is the culture)
. 63) Laleb Hickmon Payne- Sexual Assault (because it is the culture)
. 64) Devin Williams- smuggling herion into prison as a guard (because it is the culture)
. 65) Danielle Alexandra Lucas- Sexaul Misconduct (because it is the culture)
. 66) Gregory Rodriguez- Convicted of 64 Counts Sexual Abuse, prison officials had been aware of his conduct but still did not fire him, instead complaints were all pushed aside (FCI Dublin) (because it is the culture)
. 67) JUDGE MITCHELL Q. SOULES- selling cocaine
. 68) 10 Guards and Warden- charged with rape club (DUBLIN) (because it is the culture)
. 69)Avery Richard Smith- 11 charges;4 counts of 1st degree assault and battery, 5 counts of 3rd degree assault and battery, 2 counts of misconduct in office (because it is the culture)
. 70) Jonah Levi- MURDERING PRISONER (because it is the culture)
. 71) Caleb Blair- MURDERING PRISONER (because it is the culture)

FROM: 21758032
TO: Cole, Jeff
SUBJECT: PART Four
DATE: 06/20/2026 12:22:41 PM

. When any reader processes the phrase "Justice for ALL" do the words ring true for those whose lives are changed for ever by the hands of persons in positions of power? At NO point in our nation has the phrase "Justice for ALL" been followed by the words "except for prisoners". The Plaintiff's are human beings and have been violated and remain in conditions that the culture promotes abuse and the abusers. Promotions are handed to those that falsify reports, destroy lives, and cover-up misconducts of other fellow officers. Women that are violated are punished for speaking out and suffer even greater once it is known that they are attempting to expose the facts.

ALL ABUSE IS GROSS AND CAN NOT GO UNPUNISHED OR UNHEARD.
THERE are NO EXCEPTIONS to this STATEMENT. ABUSE IS ABUSE PERIOD.

EXHAUSTION OF ADMINISTRATIVE REMEDIES/
AND HOW IT IS BROKEN & SET-UP TO CAUSE FAILURE

. The sheer volume of correctional healthcare lawsuits reflects how ineffective prison grievance systems are for incarcerated people. After all, grievance systems should help people address their concerns so that neither side has to engage in costly, time-consuming litigation. Instead, grievance system, in the simplest terms is broken. The federal prison grievance system is designed to shut down complaints. Conditions are so bad on the inside that since 2000, roughly half of all state prison systems have been court-ordered to improve mental and medical healthcare. In practice, however, incarcerated people who turn to grievance systems are forced to run a gauntlet of rules and regulations just to be heard, and very rarely succeed. This is especially true when it comes to medical complaints: the analysis of a decade of data from the Data Liberation Project finds that, between 2014 and 2024, a startling 98% of medical grievances were rejected for reasons ranging from the bureaucratic (such as using the wrong size sheet of paper) to the substantive (actually being denied on the merits of the complaint). Less than 1% of medical cases ended in a grant of relief. EVEN LESS FOR ABUSE OF STAFF MEMBERS! THIS AMOUNTS TO A GRAND TOTAL OF JUST 940 CASES OUT OF 65,712.

. With nearly all grievances rejected or denied, it's hard not to see the federal system as designed to block complaints and lawsuits RATHER than a meaningful path for relief. The grievance system is designed to deter lawsuits not to solve problems. In theory, grievance procedures are an important tool for incarcerated people to pursue fair treatment and defend themselves in a system designed to disempower them. This power is particularly important in the context of medical and abusive grievances, where needs are widespread and urgent, and where failure to meet them can lead to injury, illness, and death. In practice, however, the grievance system is a black hole, a time waster, and a deterrent to complaining at all. It's a long and winding maze of rules and technicalities that must be cleared before an incarcerated person can get their

complaint to a setting that might actually force a change: the courts. The prison staff know that if they refuse the prisoner the administrative remedy MOST WILL GIVE UP because they feel beaten down. The staff with in FCI Aliceville are so intertwined by family relation or lovers that they circle the wagons to protect each other against the filing of remedies against those they care for.

. There is NO AVAILABLE remedy inside FCI Aliceville.

. The Plaintiff has met the exhaustion requirements and she SEEKS that the court finds in her favor that there was no AVAILABLE remedy due to the conditions shown herein: 1) shortage of staff; 2) staff relations and lovers protecting each other/outrageous amount of staff members connected at Aliceville; 3) remedies thrown away/lost

## CONCLUSION

. The unsafe conditions that "pose an unreasonable risk of serious damage to [a prisoner's] future health" may violate the Eighth Amendment even if the damage has not yet occurred and may not affect every prisoner exposed to the conditions. See Helling v. Mckinney, 509 U.S. 25,33,113 S. Ct. 2475 (1993) (a remedy for unsafe conditions need not await a TRAGIC event). The lasting and permanent harm that the Defendant has caused the Plaintiff HAS and WILL change her life forever.

. The abuses, threats, retaliations, create such an unsafe environment, and sexual harassment/abuses ARE ALL MORE THAN ANY WOMAN should be forced to endure while living under the total control of the Bureau and its staff.

. The scope of the Eighth Amendment protection is broader than there mere infliction of physical pain. Evidence of "fear mental anguish and misery CAN ESTABLISH the requisite injury for an Eighth Amendment claim. See Scher v. Engelke, 943, F. 2d 921,924 (8th Cir. 1981); Kingsley v. Napoleone, 897, F. 2d 103, 111 (3rd Cir.1990); Davenport v. Edrobertis, 653 F. Supp. 649, 656-58, 663-64 (N.D.Ill. 1987).

. Conditions that are physically OR Mentally harmful, or that deprive prisoners of basic needs, only if they serve a legitimate correctional purpose. There is NO COURT NOR PUBLIC person that would find that the threat of rape, death, and constant sexual advances and harassments to be apart of the legitimate correctional purposes of incarceration inside the Bureau. The Plaintiff has witnessed and has reached out publicly for safety measures in her case and now reaches out to the court for aide and to be fully heard.
(SEE ATTACHED DECALARATIONS AND WITNESS STATEMENTS NUMBERED 1 - 11)

FROM: 21758032
TO: Cole, Jeff
SUBJECT: Certificate of Service
DATE: 07/22/2026 06:57:23 PM

CERTIFICATE OF SERVICE

I THE UNDERSIGNED DO HEREBY CERTIFY THAT THE FOREGOING MOTION HAS BEEN SENT TO THE CLERK OF THIS COURT VIA U.S. MAIL POSTAGE PREPAID AFFIXED. FURTHER SHE REQUESTS THAT A COPY BE PROVIDED TO ALL PARTIES VIA THE EM/CMF SYSTEM AS SHE IS DETAINED AND HAS NO FURTHER MEANS TO DO SO.

HUMBLY, April Bowling #21758-032

HUMBLY, [signature] #24479-052

DONE THIS 27th DAY OF JULY, 2026

Declaration of April Bowling

pg 1

I, April Bowling declare the following:
I am the Plaintiff in this case and I have personal Knowledge of the facts stated in this declaration.

On or about October-December 2025, while I was housed at FCI Aliceville, I was sexually harassed/assaulted by Officer T. Garner. The incident's occurred in housing Unit A-3.

Officer T. Garner made multiple approaches to myself and my bunkie (Bailey) pressuring us to engage in sexual acts with one another so that he could watch. On multiple occasions Officer T. Garner called me to the Officer's station under the pretense of wanting something, only to attempt to compel me to perform oral sex on him.

Officer T. Garner was a very persistant man. We got locked down early one night and Garner told me and Bailey that he would leave the orderly closet (downstairs) open so when he would let us (me & Bailey) out to clean that he wanted to go to the closet to have sex.

Pg 2

Something happened that night and Officer Garner never let us out.
On another occasion I was downstairs in the orderly closet with two other AIC's (Bailey & unnamed AIC) when Officer T.Garner came to the door and asked us "What are you all doing in here"? then he went on asking us to have sex with one another and himself he would only need a couple minutes with us the unnamed AIC said to Garner "What are you a two pump chump"? when she said that Garner got mad and left the closet.
When Defendant Garner would conduct his Rounds he would stop at our room (#201) and start talking inappropiate to me and my cell mate (Bailey) I would always brush it off but deep down I felt like he had all the control.
There was times I was sleeping and he would come wake me up just to talk to me. I felt unsafe knowing there was no safe place to go.
Garner would ignore that we had our wickie up, and just open our door. The inappropiate comments got so bad that we would try to

pg 3

ignore him at all cost. me and Bailey had a buddy system going so we didnt have to be alone. I've witnessed first hand Garner talking dirty to other AIC's inside A-3 housing unit and outside the unit.

I was walking on the compound with my bunkie (Bailey) when Officer Garner approached me saying "Where the fuck are you going with your hair done like that"? In that moment I knew he wasnt gonna stop.

Officer T. Garner was just a predator looking for his prey inside these walls where alot of women are vulnerable, and he used that to his advantage.

Officer Garner and (Bailey) had a disaggreement about something and later on in the evening he was passing out mail and Garner made "Bailey" apologize to him before he would give her mail to her.

Defendant Garner went to work in B Unit in November 2025 and when he came back to A3 in December he came to my room (#201) telling me he hopes he doesnt get into trouble because something happened while in B Unit. He said that some girl went into the middle

pg 4

while he was in there and he didnt know.
In my head I was thinking well if you
didnt do anything "why you so worried"?
Late December 2025 Garner came to
the orderly closet door and asked me
"when am I gonna get my dick sucked"?
I responded fucking "Never" he got
really mad and thats when it all
shifted and thats when he tried to
choke me. I pushed him away and
walked off.
After that incident I was traumatized
and scared for my life.
I went into a deep depression. I
suffered psychological trauma. It
really made me go into a dark place.
It took alot of courage to come
forward about this because this officer
(Garner) was loved by everyone on this
compound. Staff and inmates. I
reported the incident via email to AW
Trotman (Prea Coordinator) on April 14th 2026.
Trotman called me to the AW's office on
April 15th to ask me about the incident. After
that I saw medical and Psychology.
On May 21st 2026 I saw SIS Ms. V.
and spoke with OIG (Justin) and thats
when I told them about Garner putting

pg 5

his hands on me. I knew once I spoke with OIG I could rely on them to keep us safe. Officers on this compound are either related or sleeping together so I couldnt tell them everything because retaliation is real here.

I declare under Penalty of Perjury that the following statements are true and correct.

Executed on: July 27th 2026

Signature: April Bowling

April Bowling #21758-032

TRULINCS 21758032 - BOWLING, APRIL - Unit: ALI-A-C

---

FROM: AW Operations
TO: 21758032
SUBJECT: RE:***Inmate to Staff Message***
DATE: 07/09/2026 10:57:02 AM

Good Morning

Your PREA case has been submitted and is currently pending. If you need anything else, please let me know.

V. Trotman

---

From: ~^! BOWLING, ~^!APRIL <21758032@inmatemessage.com>
Sent: Wednesday, July 8, 2026 12:53 PM
Subject: ***Request to Staff*** BOWLING, APRIL, Reg# 21758032, ALI-A-C

To: Ms.Trotman
Inmate Work Assignment: Unit Orderly

I would like to verify with you that I had reported to you in April 15 2026 about one of the officers that worked here and the sexual harassment/assault that ive endured from this officer. I also saw Medical Staff and Psychology the same day. Its been a couple months now and we have not heard anything back from anyone even when we saw Ms.V and talked to OIG. So if there is any updates could you please let me know something. Thank you for your time.
I just wanted to have this for my documentation.

DECLARATION OF MACKENZIE L. BAILEY

I, Mackenzie L. Bailey, declare the following: I am the Plaintiff in this case and I have personal knowledge of the facts stated in this declaration. On or about October through December 2025, while housed at FCI Aliceville, I was sexually assaulted by Officer T. Garner. The Incident occured in A3 Housing Unit. The following happened on numerous occasions with my bunkmate April Bowling. Officer T. Garner would conduct his rounds, approaching us talking volgar to us stopping at our door whether it was open or closed he'd still make his presence known. Being the persistant man he was towards us he come to our room #201 and even wake my bunkmate (April) up out her sleep so he could talk to her. Both of us being Unit Orderlies allowed us access to the Orderlie supply closets. On couple occasions he'd stop by the closet to talk to us but one incident was with another AIC that was in there with us. He stood in the only entrance/exit to the closet asked "What are you guys doing?" then proceeded to tell us that he wanted us to engage in sexual acts towards one another, that he would only need a few minutes with us. The other A.I.C. told him "That would not happen, he's a two pump chump." He got mad at that statement and left. On

another occasion we got locked down early to our Rooms. T. Garner told April that he was going to let us out to clean the unit and then bring us to the closet to have sex with him, but something on the compound happened and he never came. One day when we were going to recreation, T. Garner was working compound when he seen us coming he stated to April "Where the fuck are you going with your hair done like that, I know you aint going to see anyone else." April looked at me mortified on how he was acting towards her on the compound too. On an evening shift that T. Garner worked I "called him on his bullshit" waiting for mainline to be called while he was in other female faces by themselves for long periods of time. I told him he was disgusting because he was acting like a predator talking to multiple females on the compound like he did April and me. As I was walking down the stairs he stated to me "You dont know who your fucking with. You better watch ~~what~~ how you talk to me." I went to mainline and when I came back he approached me asking "whats your problem?" I responded "Im not fucking with you, leave me alone, I dont have shit to say to you." Then my bunkie yelled to me told me to come to the room. She told that T. Garner approached her asking her "what her bunkies fucking problem was?" She didnt know what happened till I got to the room and told her.

Then I was made aware I had mail. I Tried to approach him to recieve my mail, he told me "I could wait till I got to my Room" I waited for him to get to my Room. once he did he Stated "I better fucking apologize to him or I wouldn't get my mail". I contemplated on apologizing to him because what I said was true, but he held power over my daily living in that very moment. So I apologized, because I felt I had NO CHOICE. When he left my room I cried because he just belittled me to nothing. Officer T. Garner believed and threatened his power of his position that felt he should get what he asked or wanted. We started ignoring him, avoiding him at all cost, never left eachothers side, an he did not take kindly to rejection. To have someone that took an oath to protect us, and then want and demand things from us just because we're inmates. That should never be a fear that we have to live around. After all the incidents happened we stopped seeing him around. That was when we wanted to come forward but was terrified of retaliation, because they (all staff) friends with him. We did report it to the PREA Coordinator AW Trotman on April 14th, 2026, then on April 15th, 2026, We were seen by Medical and Psychology. Then on May 21, 2026 I met with SIS Ms. V to speak with O.I.G. Since the incidents they have caused me harm

including emotional distress, fear, trauma of physical and mental abuse.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: July 27th 2026
Signature: [signature]
Print Name: Mackenzie L. Bailey

TRULINCS 24479052 - BAILEY, MACKENZIE L - Unit: ALI-A-C

---

FROM: AW Operations
TO: 24479052
SUBJECT: RE:***Inmate to Staff Message***
DATE: 07/10/2026 03:12:01 PM

Good Afternoon

Your PREA case has been submitted and is currently pending. If you need anything else, please let me know.

V. Trotman

---

From: ~^! BAILEY, ~^!MACKENZIE L <24479052@inmatemessage.com>
Sent: Thursday, July 9, 2026 2:20 PM
Subject: ***Request to Staff*** BAILEY, MACKENZIE, Reg# 24479052, ALI-A-C

To: AW Trotman
Inmate Work Assignment: unit orderly

I am writing you to verify that i had reported to you on April 14, 2026 about the sexual harassment by an officer that used to work here.. I was wondering if anything has been updated in the system on what is going on..I recently met with Ms.V on the 21st of May and havent heard anything since.. I just needed verification from you that i followed correct steps for documentation..
Thank you for your time in advance

ox 4000
eville, AL 35442
Aliceville

9589 0710 5270 3787 2572 51




SECURITY

U.S. DISTRICT C...
NORTHERN DISTRICT OF ...
JUL

Hugo L. Black Courthouse
1729 5th Ave. North
Birmingham, AL
35203